UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALLEN CORY C.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C18-5923 MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by rejecting the medical opinions of John Jiganti, MD and adversely assessing Plaintiff's symptom testimony. (Dkt. # 10 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in July 1957, is 61 years old[1] and has worked as the owner and manager of a mini-storage business that closed in July 2008 due to the economic downturn (AR

---

[1] The ALJ erroneously listed Plaintiff's age at 51 years in 2018. (AR at 914.) Plaintiff does not argue that this created any reversible error.

ORDER - 1

at 52-63), and the owner and manager of an engraving business that closed in December 2012 due to losing money during a snowstorm (*id.* at 48-49). *See id.* at 914. Plaintiff earned no income operating either of these businesses. Plaintiff's date last insured was December 31, 2007. Plaintiff was last gainfully employed in July 2007. *Id.* at 912.

On December 2, 2009, Plaintiff applied for benefits, alleging disability as of July 9, 2007. AR at 42, 114, 251-52. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 132. After the ALJ conducted a hearing on June 23, 2011, the ALJ issued a decision finding that Plaintiff had engaged in substantial gainful activity from the alleged onset date through the date last insured and was therefore not disabled. *Id.* at 132, 137.

Plaintiff appealed that decision and the Appeals Council remanded the case with instructions to obtain additional evidence regarding Plaintiff's self-employment, specifically the comparability and worth of the Plaintiff's work activity. *Id.* at 146-47. The ALJ conducted a subsequent hearing on April 30, 2015, consistent with the order on remand. As part of the review, the ALJ sent interrogatories to a vocational expert to obtain additional information regarding salary or wage data related to Plaintiff's work. *Id.* at 11 n.1. The vocational expert also testified at the hearing. *Id.* During the hearing, Plaintiff's counsel requested that the ALJ disqualify himself from Plaintiff's case. *Id.* at 12. The ALJ denied the request. *Id.* The ALJ again found that the Plaintiff had engaged in substantial gainful activity from the alleged onset date through the date of last insured. *Id.* at 16.

Plaintiff subsequently appealed the ALJ's second decision to this Court. On December 19, 2016, this Court reversed and remanded the case for another hearing before the ALJ to determine whether Plaintiff was an "impaired individual" within the meaning of the Social

Security regulations due to his self-employment activities. *See Allen Cory C. v. Colvin*, C16-05386 JRC (dkt. # 12 at 2).

On remand, another ALJ, consistent with the directions provided by this Court in its December 19, 2016 Order, considered whether there was sufficient evidence to determine whether Plaintiff was an impaired individual and whether his self-employment work activity rose to the level of substantial gainful activity. AR at 912. On this issue, the ALJ determined that since the information necessary to make this conclusion was solely within the control of the Plaintiff, and not readily available to the ALJ, the ALJ was unable to make such a determination. *Id.* Accordingly, the ALJ found that Plaintiff had not engaged in substantial gainful employment and proceeded with the sequential evaluation process to allow for a discussion of the medical evidence rather than focus on the self-employment aspect of Plaintiff's claim. *Id.* On April 4, 2018, the ALJ conducted a hearing. *Id.* at 910. The ALJ then issued an order finding:

> Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 9, 2007.
>
> Step two: Plaintiff has the following severe impairments: osteoarthritis of the hips; degenerative joint disease of the right knee; back pain injuries status-post motor vehicle accident in August 2006; and obesity.
>
> Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]
>
> Residual Functional Capacity: Plaintiff can perform light work expect that he can stand and walk for two hours in an eight-hour workday and sit for up to six hours in an eight-hour workday; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and must avoid concentrated exposure to vibrations, hazards, moving machinery, and heights.
>
> Step four: Plaintiff can perform past relevant work as a retail store manager of both an engraving business and of a storage facility.

AR at 913-16.

---

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 3

Neither party requested review by the Appeals Council. The ALJ's decision is therefore the Commissioner's final decision. (Dkt. # 10 at 2.) Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Rejecting the Medical Opinion of John Jiganti, MD.

Plaintiff argues that the ALJ erred by rejecting the medical opinion drafted by Dr. Jiganti. (Dkt. # 10 at 3.) The medical opinion Plaintiff relies on is an undated Disabled Parking Application for Individuals on a Department of Licensing form. AR at 906. The application states that Plaintiff cannot walk 200 feet without stopping to rest, is severely limited in his ability to walk, and cannot walk without the use of an assistive device. *Id.* Plaintiff seems to be unsure if Dr. Jiganti examined him because he argues that Dr. Jiganti "appears" to be an examining doctor for Plaintiff. (Dkt. # 10 at 3.) In addition to this ambiguity, there is also nothing in the record that indicates when the application was filled out or when Dr. Jiganti would have examined Plaintiff. *See generally* AR at 906. As a threshold matter, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ nevertheless rejected the application offered as a medical opinion for two additional reasons.

First, that the opinion is significantly more restrictive than the record supports (citing two physical exams that found Plaintiff was "ambulatory and able to carry out light or sedentary work" (AR at 915, 1104); "patient reports: no bone pain, . . . no back pain, no joint swelling, no limited range of motion" (*id.* at 915, 1163); and "normal gait and station," "range of motion normal," "strength and tone normal," "no joint swelling," "[a]mbulatory and capable of self care but unable to carry out any work activities. Up and about more than 50% of waking hours" (*id.* at 915, 1170)). Plaintiff argues that these reasoning were not specific and legitimate because the ALJ discounted other medical records that would have supported Dr. Jiganti's opinion. (Dkt. #10 at 3-4.)

In support of his argument, Plaintiff cites records that reflects Plaintiff's knee pain but are not entirely inconsistent with the ALJ's findings. For example, Plaintiff's records state: Plaintiff self-reported that his knee still hurt, that there was some swelling in the knee, he had trouble with prolonged standing, sitting, squatting, or kneeling, and "At this point there is no specific curative treatment. He will eventually be a candidate for a total knee." AR at 671; *see also* 675 (Plaintiff has problems with prolonged walking, kneeling, or squatting), 677 (same), and 904-905 (recommending weight loss and that Plaintiff start with the YMCA to help with his knee issues). The ALJ accounted for the limitations discussed in the above records in defining the residual function capacity – *i.e.*, Plaintiff can only walk, stand, or sit in limited durations and can only occasionally stoop, kneel, or crouch. *Id.* at 913. Regardless, even if the records cited by Plaintiff did contradict the ALJ's findings, the ALJ's decision to give no weight to the conclusory application is supported by substantial evidence in the record.[3]

Second, the ALJ stated that the disability assessment for a disabled parking permit is unrelated to the disability determination and arguably not relevant. AR at 915. Plaintiff argues that this conclusion was in error because the ALJ is not permitted to rely on the purpose of the evaluation in determining its evidentiary weight. "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). The court in *Lester* was presented with an argument that the Plaintiff's own examining physician should be given less weight because the examiner was hired by Plaintiff. Clearly the answer was no. But that is not the case here. Dr. Jiganti's "check the box" report was

---

[3] Plaintiff also argues that the ALJ failed to explain how the MRI findings are consistent with the other medical findings in the record and inconsistent with Dr. Jiganti's medical opinions. (Dkt. # 13 at 2.) Plaintiff makes this statement in both his opening and reply brief but fails to argue why the MRI findings are inconsistent; he only states that they are and cites to the record. (*Id.*; *see also* (Dkt. # 10 at 4).) Having reviewed the MRI findings, the Court does not find that there is an apparent inconsistency with the medical records.

ORDER - 6

conducted for the sole purpose of obtaining a parking permit and not to determine whether Plaintiff is able to work. While any reliance on the purpose of Dr. Jiganti's opinion by the ALJ may constitute legal error, the Court finds any error is harmless in light of the clear and convincing reasons provided by the AJL to reject Dr. Jiganti's opinion as stated above.

### B. The ALJ Did Not Err in Adversely Assessing Plaintiff's Testimony

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records. AR at 914. To support this finding the ALJ relied on a number of findings. *Id.*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). As relevant here, once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints;

general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59.

The ALJ provided clear and convincing reasons for rejecting the Plaintiff's testimony regarding his complete inability to work. Contrary to Plaintiff's argument, the ALJ did not rely solely on the objective medical evidence to discount Plaintiff's testimony. The ALJ found that the Plaintiff had a lack of any recent treatment for back, neck, hip, or knee issues. AR at 915. Any treatment he did have was conservative and that "overall, the record shows that the [Plaintiff's] health was stable and exams and preventative testing were unremarkable." *Id.* The ALJ also found that Plaintiff was "doing some janitorial work" which was inconsistent with Plaintiff's statements regarding the severity of his pain. *Id.* The ALJ also commented on the inconsistencies in the medical record as another basis for weighing Plaintiff's credibility.

For example, the ALJ found that Plaintiff's subjective complaints regarding his knee pain were more severe that the objective medical evidence – *i.e.*, only moderate swelling, none to mild effusion, occasional reduced range of motion, and "some tenderness." AR at 914. With respect to Plaintiff's complaints regarding hip pain, the ALJ also noted that the severity of Plaintiff's complaints were contradicted by the medical records. The ALJ found that Plaintiff had a long history of complaining about hip pain but his hip x-ray and MRI were within normal limits and he had a full range of motion in his hips. *Id.* The ALJ also reviewed additional medical evidence that revealed that Plaintiff had normal gait and station, normal range of motion, strength, and tone, as well as findings that Plaintiff was ambulatory. *Id.* The Court is satisfied

that the ALJ supported his findings regarding the severity of Plaintiff's symptoms with clear and convincing evidence.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 11th day of June, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge